# EXHIBIT 3

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
Amanda J. Rosenberg (SBN 278507)
*arosenberg@kalielgold.com*
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783

**KALIELGOLD PLLC**
Sophia G. Gold (SBN 307971)
*sgold@kalielgold.com*
490 43rd Street, No. 122
Oakland, California 94609
Tel: (202) 350-4783

*Attorneys for Plaintiff and the Proposed Class*

ELECTRONICALLY
FILED
*Superior Court of California, County of San Francisco*
09/19/2024
Clerk of the Court
BY: AUSTIN LAM
Deputy Clerk

CGC-24-618269

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| DYLAN DAWSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION, SHIPT, INC., and DOES 1- 50, inclusive,<br><br>Defendant. | Case No.<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff DYLAN DAWSON, on behalf of himself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through his attorneys as follows:

## NATURE OF ACTION

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendants Target Corporation ("Target") and Shipt, Inc. ("Shipt") (together, "Defendants"), arising from Defendants' deceptive promise to provide "free delivery" or flat-rate delivery at artificially low rates.

2. Shipt is a same-day delivery service that provides consumers with deliveries from various merchants, including Target. Target owns and operates Shipt and offers a Target same-day delivery service through Shipt at multiple locations throughout California.

3. Shipt offers monthly and annual memberships. Shipt prominently advertises that consumers with the Shipt membership will receive free delivery for orders over $35.[1] Shipt further advertises that orders less than $35 are subject to a flat delivery fee, and consumers using Shipt without a Shipt membership are subject to the same flat delivery fee.

4. Similarly, Target (through Shipt) offers monthly and annual memberships in exchange for free delivery for orders over $35. Target further advertises that orders less than $35 are subject to a flat delivery fee, and consumers using Target same-day delivery without a membership are subject to the same flat delivery fee.

5. Thousands of Californians availed themselves of these offers and continue to do so every day.

6. However, Defendants systematically fail to honor these promises. Instead, Defendants charge all California users a $3.99 "CA Shoppers Benefits Fee" which they add to every order that is delivered in California.

7. This fee, which is tacked on to every delivery order in California (but not orders placed for pick-up in store) is, by definition, a delivery fee.

[1] *See* https://help.shipt.com/pricing/do-you-have-a-delivery-fee (last accessed September 3, 2024).

8. Throughout the entirety of the purchasing process up until the very last step, Defendants advertise a free or flat rate delivery fee without any additional CA Shopper Benefit Fee. Reasonable consumers like Plaintiff proceed through check-out without ever becoming aware of any additional fees assessed by Defendants until right before purchase. This is a textbook bait-and-switch.

9. It is false and deceptive for Defendants to surreptitiously add extra fees at the end of the purchasing process, especially when they prominently advertise free or flat-rate delivery.

10. Plaintiff and other class members relied on Defendants' promise of free or flat rate delivery and were injured by Defendants' practices. Plaintiff brings this action on behalf of himself, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent Defendants from continuing to engage in its illegal practices described herein.

## PARTIES

11. Plaintiff Dylan Dawson is a citizen of the State of California who resides in the County of San Francisco, State of California.

12. Defendants Target Corporation maintains its principal business offices in Minneapolis, Minnesota.

13. Defendants Shipt, Inc. maintains its principal business offices in Birmingham, Alabama.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over Defendants and the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10, because this case is a cause not given by statute to the other trial courts.

15. Plaintiff is informed and believes that the State of California has personal jurisdiction over the Defendants named in the action because Defendants is authorized to conduct and does conduct business in this State.

16. The amount in controversy exceeds the jurisdictional minimum of this Court.

///

## COMMON FACTUAL ALLEGATIONS

### A. Defendants Lobbied for Proposition 22, And Then Didn't Want to Pay the Costs Associated with Its Passage.

24. Proposition 22 was a ballot initiative in California in the November 2020 election which aimed to exempt app-based transportation and delivery companies from AB5. AB5 would have required Shipt and other delivery companies to classify their drivers as employees rather than independent contractors. Had AB5 remained the law, all Shipt drivers would have been guaranteed a variety of extensive benefits under state law, including overtime, sick time, health care, bargaining rights, and unemployment insurance, among others.

25. When AB5 passed in September 2019, app-based food delivery companies, including Shipt, publicly protested and decried the law as incompatible with their business model.

26. Desperate to avoid the profit-cutting implications of AB5, the app-based delivery companies devised Proposition 22.

27. Proposition 22 aimed to exempt app-based delivery companies from the scope of AB5. But in a concession to labor advocates, and in an effort to gain public buy-in, the Proposition also provided certain minimum protections and benefits to drivers. Those protections—while not nearly as extensive as those which would have been afforded to drivers had they been deemed employees—did guarantee drivers a higher level of benefits than they had been receiving as independent contractors prior to the passage of AB5. For example, under Proposition 22, drivers would receive 120% of the local minimum wage for each hour spent driving. Shoppers would also receive limited expense reimbursement as well as a health insurance stipend, among other benefits.

28. Shipt and other app-based delivery companies poured millions of dollars into the Proposition 22 campaign. Proposition 22 quickly became the most expensive measure in California history, with over $200 million contributed to the campaign effort.

29. Shipt and other app-based delivery companies sold California voters on the idea that Proposition 22 was a "compromise" that would "create a third employment classification" allowing drivers "more perks than the average independent contractor but wouldn't entitle workers

to the full benefits of an employee" that they otherwise would have been entitled to under AB5.[2] Proposition 22, these companies argued, was the way to ensure adequate protections to drivers, while also keeping their businesses afloat.

30. After months of extensive campaigning, advertising, and lobbying, Shipt and the other app-based delivery companies ultimately got their way, and California voters passed Proposition 22, exempting Shipt and other companies from AB5.

31. Shortly after the passage of Proposition 22, however, Shipt faced a problem. Proposition 22—hailed as the "compromise" that would largely exempt Shipt from paying for the extensive benefits that otherwise would be required under California employment law—still required Shipt to pay for certain benefits and protections that it had not previously been covering. These benefits posed a threat to Shipt's profit margin.

32. Despite spending millions of dollars campaigning for the passage of Proposition 22, Shipt didn't want to pay the costs associated with its passage.

33. That is why Shipt began charging a "CA Shopper Benefits Fee." The CA Shopper Benefits Fee is $3.99 and is added to all California delivery orders. California consumers have no option to avoid paying the CA Shopper Benefits Fee.

**B. California Consumers Purchase from Defendants Based on the Promise of Free or Flat Rate Delivery, but Defendants Fail to Honor Those Promises.**

34. Target is a retail corporation that operates a chain of discount department stores throughout the United States, including in California. Target is the seventh-largest retailer in the United States, and a component of the S&P 500 Index.

35. Shipt is a delivery service wholly owned by Target.

36. Shipt facilitates same-day delivery from various retailers to its customers. Shipt customers can place orders for products from local popular retailers including Costco and Target.

[2] https://www.wired.com/story/uber-lyft-fight-law-say-doesnt-apply/

37. Shipt offers a monthly membership or annual membership. Shipt advertises that consumers with the Shipt membership receive free delivery for orders over $35.[3] Consumers can also purchase directly through Shipt without a membership.

38. For Shipt members, Shipt advertises that for orders over $35, delivery will be $0. For orders less than $35, or those without a Shipt membership, delivery will cost a flat fee (currently $10).

39. Shipt plasters its promise of free or flat rate delivery in every advertisement on its websites and on its apps. Indeed, Shipt advertised their program consistently across all marketing channels, as demonstrated below:







[3] *See* https://help.shipt.com/pricing/do-you-have-a-delivery-fee (last accessed September 3, 2024).

41. In short, in every advertisement and description of the service, Shipt always uses the same promise of free or flat rate delivery, which is false.

42. The promises are materially the same on the Target website. Target (through Shipt) offers monthly and annual memberships in exchange for free delivery for orders over $35. Target further advertsies that orders less than $35 will have a flat delivery fee, and those without a Target membership will pay the same flat delivery fee (currently $9.99/delivery). An exemplar of Target's advertising is shown below:




43. The foregoing promises are false. Despite Defendants' representations to the contrary, delivery is never "free" through Defendants, nor is it provided at the flat advertised rate.

44. Instead, Defendants deceptively add on a "CA Shopper Benefits Fee" to all of its orders, rendering its delivery price advertisements false.

45. This is a classic case of “Drip pricing”. “Drip pricing” works because as research has shown, “our brains tend to fix on the price we first encountered even after we learn the total cost. And even when consumers learn about the hidden fees, they often pay up rather than shop around . . . because they figure that ‘investing more time into searching for it will not be worthwhile.’” Santul Narkar, *It’s a Great Deal, Before the ‘Drip Pricing*, New York Times, available at https://www.nytimes.com/interactive/2024/02/23/business/what-is-drip-pricing.html (quoting Professor David Friedman of Willamette University).

46. Reasonable consumers like Plaintiff understand that a delivery may necessarily incur the delivery fee disclosed. They do not understand that an additional delivery fee in the form of the CA Shopper Benefits Fee will be added to their purchase.

47. By assessing add-on fees for “CA Shopper Benefits,” Defendants render their promises of free or flat rate delivery false.

48. The CA Shopper Benefits Fee is a delivery fee. As indicated by its name, the CA Shopper Benefits Fee is used to pay drivers for the benefits they are afforded under Proposition 22. A fee that is tacked on to every order to compensate drivers in exchange for their delivery of goods is, by definition, a delivery fee. Notably, this same fee is not charged on orders placed for in-store pick-up at Target stores.

49. Thousands of Californians availed themselves of Defendants’ offers and continue to do so every day.

50. The CA Shopper Benefits Fee undermines Defendants’ promise to provide free or flat rate delivery and amounts to a bait & switch.

51. In luring consumers into making purchases based on the promise of free or flat rate delivery, and then reneging on that promise by adding a CA Shopper Benefits Fee to every order, Defendants deceive consumers and are unjustly enriched.

**C. The CA Shoppers Benefits Fee is a Junk Fee That Violates Federal Guidance**.

60. Defendants’ CA Shoppers Benefits Fee is precisely the type of “Junk Fee” that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3

61. As the Federal Trade Commission said recently in its effort to combat Junk Fees,

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, , October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

62. In July 2024, California expanded its Consumer Legal Remedies Act ("CLRA") to make illegal "drip pricing," which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later.

63. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising, the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures iN Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

64. Defendants violate federal guidance and California law by adding the CA Shoppers Benefits Fee as a line item after the consumer "add[s] to shopping cart." The CA Shoppers Benefits Fee itself is a sham, a classic "junk fee."

**D. Plaintiff's Experience**

66. On June 14, 2024, Plaintiff placed an order for same day delivery on the Target App, to be delivered by Shipt. Based on Defendants' representations, Plaintiff understood that he would be charged a $9.99 flat rate delivery fee for his purchase.

67. However, Defendants charged Plaintiff an additional delivery fee in the form of a $3.99 CA Shopper Benefits Fee, despite its representation that Plaintiff would be charged a flat fee of $9.99.

68. Had Defendants disclosed the CA Shopper Benefits Fees, Plaintiff would have made a different choice with respect to whether to use Defendants for his purchases.

**CLASS ALLEGATIONS**

69. Pursuant to California Code of Civil Procedure § 382, Plaintiff brings this action on behalf of himself and a Class of similarly situated persons defined as follows:

> All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid a CA Shopper Benefits Fee to Shipt and/or Target.

70. Excluded from the Class are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

71. Numerosity: At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is

impractical. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

72. Commonality: There are questions of law or fact common to the Class, which include, but are not limited to the following:

a. Whether during the class period, Defendants deceptively represented its delivery fees;

b. Whether Defendants' alleged misconduct misled or had the tendency to mislead consumers;

c. Whether Defendants engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d. Whether Defendants' alleged conduct constitutes violations of the laws asserted;

e. Whether Plaintiff and members of the Class were harmed by Defendants' misrepresentations;

f. Whether Defendants were unjustly enriched;

g. Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

h. Whether an injunction is necessary to prevent Defendants from continuing to engage in the wrongful conduct described herein.

73. Typicality: Like Plaintiff, many other consumers purchased from Defendants based on Defendant's representations. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member was injured by Defendant's false representations. Plaintiff and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

74. Adequacy of Representation: Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions.

Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

75. Prerequisites for Injunctive Relief. Defendants has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested purchasing from Defendants, provided he is actually provided with truthful pricing representations, as promised.

76. Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

77. Prerequisites for Damages. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

78. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

79. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Defendants's conduct related to deceptively representing that it would provide free or flat rate delivery violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

80. The UCL imposes strict liability. Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

81. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

82. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

83. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

84. Defendants committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting on its website and mobile app that it would provide free or flat rate delivery, when, in reality, they add a delivery fee through the assessment of the CA Shopper Benefits Fee to every order.

85. Defendants' acts and practices are unfair and offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

86. The harm to Plaintiff and the Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described herein.

87. Defendants' conduct also constitutes an "unlawful" act under the UCL because, as detailed herein, Defendant violates the CLRA and FAL.

88. Defendants' business practices are fraudulent insofar as they have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

89. Plaintiff relied on Defendants' misrepresentations about the delivery fees, believing he would receive flat rate delivery as promised.

90. By falsely marketing free or flat rate delivery, Defendants deceived Plaintiff and Class members into purchasing from Defendants, only to renege on that promise by charging a CA Shopper Benefits Fee. Defendants' conduct amounted to a bait & switch.

91. Had Plaintiff known the truth, he would not have purchased from Defendants.

92. As a direct and proximate result of Defendants' unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into purchasing from Defendants under the false belief that they will receive free or flat rate delivery at the advertised price.

93. As a result of its unfair, fraudulent, and unlawful conduct, Defendants have been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

94. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

95. Plaintiff has no adequate remedy at law in part because Defendants' conduct is continuing. Plaintiff may seek to order delivery from Defendants again in the future, but cannot rely on its promise of free or flat rate delivery. Plaintiff therefore seeks an injunction on behalf of the general public to prevent Defendants from continuing to engage in the deceptive and misleading practices described herein.

## SECOND CLAIM FOR RELIEF
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**

96. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

97. This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendants' sale of products to consumers for delivery ordered through their websites or mobile apps were "transactions" within the meaning of California Civil Code § 1761(e). Defendants' delivery service is a "service" within the meaning of California Civil Code § 1761(b).

98. Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of products through Defendants' delivery service:

a. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

b. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

c. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

d. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

e. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

99. Specifically, Defendants advertised to customers that it would provide free or flat rate delivery to consumers, when, in reality, it adds a delivery fee through the assessment of the CA Shopper Benefits Fee to every order.

100. By falsely marketing free or flat rate delivery, Defendants deceived Plaintiff and Class members into purchasing from Defendants, only to renege on that promise by charging a CA Shopper Benefits Fee. Defendants' conduct amounted to a bait & switch.

101. Defendants continue to violate the CLRA and continues to injure the public by misleading consumers about its delivery fees. Accordingly, Plaintiff seeks injunctive relief on behalf of the general public to prevent Defendants from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the Class members, and members of the general public

may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

102. In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

103. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendants in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act. Now, Plaintiff seeks actual, punitive and statutory damages, as appropriate against Defendant.

**THIRD CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Business & Professions Code §§ 17500, *et seq*.)**

104. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

105. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

106. Defendants' material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

107. Defendants knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

108. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining

Defendants from continuing to engage, use, or employ their practice of misrepresenting their delivery fees.

109. Further, Plaintiff and the members of the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of said misrepresentations.

110. Additionally, Plaintiff and the Class members seek an order requiring Defendants to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**

111. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

112. To the detriment of Plaintiff and the Class, Defendants have been, and continue to be, unjustly enriched as a result of its wrongful conduct alleged herein.

113. Plaintiff and the Class conferred a benefit on Defendants when they paid Defendants the CA Shopper Benefits Fee, when they were promised unlimited free or flat rate delivery.

114. Defendants unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendants to retain.

115. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

116. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendants as a result of its inequitable conduct as more fully stated herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and the Class seeks judgment in an amount to be determined at trial, as follows:

(a) For public injunctive relief, enjoining Defendants from continuing the unlawful practices set forth above;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Defendants to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For punitive damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: September 18, 2024

**KALIELGOLD PLLC**

By:______________________________
Jeffrey D. Kaliel
Sophia G. Gold
Amanda J. Rosenberg

*Attorneys for Plaintiff and the Putative Class*