1  BLANK ROME LLP
   Ana Tagvoryan (SBN 246536)
2  ana.tagvoryan@blankrome.com
   Victor J. Sandoval (SBN 344461)
3  victor.sandoval@blankrome.com
   2029 Century Park East | 6th Floor
4  Los Angeles, CA 90067
   Telephone:    424.239.3400
5  Facsimile:    424.239.3434

6  Attorneys for Defendants
   TARGET CORPORATION and SHIPT, INC.
7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10               **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 11  DYLAN DAWSON and JAMIE BROWN, on behalf of themselves and all others similarly situated, | Case No. 3:24-cv-08167-AMO |
| 12 | **TARGET CORPORATION'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS; MEMORANDUM IN SUPPORT** |
| 13                              Plaintiffs, | |
| 14        vs. | [*Filed Concurrently with The Declarations of Allison Yem and Ana Tagvoryan; Proposed Order*] |
| 15  TARGET CORPORATION, SHIPT, INC., and DOES 1- 50, inclusive, | |
| 16 | Hearing: |
| 17                              Defendants. | Date:      July 3, 2025 |
| 18 | Time:      2:00 P.M. |
|  | Place:     Phillip Burton Federal Building & |
| 19 |            United States Courthouse |
| 20 |            450 Golden Gate Avenue |
|  |            Courtroom 10, 19th Floor |
| 21 |            San Francisco, CA 94102 |
|  | Judge:     Araceli Martínez-Olguín |
| 22 | |
|  | Filed:     September 19, 2024 |
| 23 | Removed: November 19, 2024 |
|  | Trial:     Not set |

24

25

26

27

28

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on July 3, 2025, at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Araceli Martínez-Olguín in Courtroom 10 of the United States District Court for the Northern District of California, located at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, 19th Floor San Francisco, CA 94102, Defendant Target Corporation ("Target" or "Defendant"), will, and hereby does, move the Court for an Order granting Defendant's Motion to Compel Arbitration (the "Motion").

Defendant's Motion is made on the grounds that Plaintiffs entered into a valid and binding arbitration and class waiver agreement, and is based on this Notice of Motion and Motion, accompanying Memorandum of Law, the Declaration of Ana Tagvoryan, the Declaration of Allison Yem, any Reply filed in support of the Motion, Shipt, Inc.'s Motion to Compel Arbitration, arguments of counsel, and the records and pleadings in this action.

## **TABLE OF CONTENTS**

**Page**

I.     Introduction.................................................................................................................7

II.    Relevant Background.................................................................................................7

       A.     The Plaintiffs' Allegations.............................................................................7

       B.     Dawson's Dealings with Target.....................................................................9

       C.     The Applicable Terms and Conditions........................................................11

III.   Legal Standard.........................................................................................................13

IV.    Argument..................................................................................................................15

       A.     Dawson Agreed to Arbitrate His Claims.....................................................15

       B.     The Parties Delegated Arbitrability to the Arbitrator..................................16

       C.     Arbitration Should Proceed on an Individual Basis.....................................18

       D.     Target is an Intended Beneficiary of Shipt's Arbitration Agreement..........19

       E.     The Court Should Stay the Instant Litigation..............................................22

V.     Conclusion...............................................................................................................22

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Brave Quest Corp.*,
  733 F. Supp. 3d 920 (C.D. Cal. 2024) ......................................................................18

*Bolanos v. Khalatian*,
  231 Cal. App. 3d 1586 (Cal. Ct. App. 1991) ...........................................................17

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) .................................................................................18

*Buchman Plumbing Co. v. Regents of the Univ. of Minn.*,
  298 Minn. 328, 215 N.W.2d 479 (1974)...................................................................21

*Dayton Dev. Co. v. Gilman Fin. Servs., Inc.*,
  299 F. Supp. 2d 933 (D. Minn. 2003), *aff'd*, 419 F.3d 852 (8th Cir. 2005) ...........22

*Falls v. Soulbound Studios, LLC*,
  No. 21-00961, 2021 WL 4295137 (C.D. Cal. July 6, 2021)....................................20

*Gartner v. Eikill*,
  319 N.W.2d 397 (Minn. 1982)..................................................................................17

*Ingalls v. Spotify USA, Inc.*,
  No. 16-03533, 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) .................................18

*Jones v. Experian Info. Sols., Inc.*,
  No. 23-3887, 2025 WL 227198 (D. Minn. Jan. 7, 2025)..........................................16

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019)..............................................................................................19

*Lap-ping Chen v. BMW of N. Am., LLC*,
  No. 21-03531, 2021 WL 3604691 (N.D. Cal. Aug. 13, 2021) .................................22

*Marina Tenants Assn. v. Deauville Marina Dev. Co.*,
  181 Cal. App. 3d 122 (Ct. App. 1986)......................................................................22

*Maybaum v. Target Corp.*,
  No. 22-00687, 2022 WL 1321246 (C.D. Cal. May 3, 2022)....................................8, 9, 17, 18

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ..................................................................................16

*Oberstein v. Live Nation Ent., Inc.*,
  No. 20-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) ..................................16

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

*Onvoy, Inc. v. SHAL, LLC*,
    669 N.W.2d 344 (Minn. 2003)...............................................................22

*In re Petters Co., Inc.*,
    480 B.R. 346 (Bankr. D. Minn. 2012) .................................................22

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
    862 F.3d 981 (9th Cir. 2017) .............................................................17

*Salberg v. Massage Green Int'l Franchise Corp.*,
    No. 15-02805, 2016 WL 3667154 (S.D. Cal. July 11, 2016) ................20

*Shivkov v. Artex Risk Sols., Inc.*,
    974 F.3d 1051 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2856 (2021).....................................15

*Smith v. Spizzirri*,
    601 U.S. 472 (2024)..........................................................................23

*SolarPark Korea Co. v. Solaria Corp.*,
    No. 23-01181, 2023 WL 4983159 (N.D. Cal. Aug. 2, 2023), *appeal dismissed,* No. 23-16150,
    2023 WL 9860831 (9th Cir. Sept. 28, 2023) .................................15, 19

*Stolt- Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..........................................................................19

*Torres v. Secure Commc'n Sys., Inc.*,
    No. 20-00980, 2020 WL 6162156 (C.D. Cal. July 25, 2020)................18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..........................................................................19

**Statutes**

9 U.S.C. § 3 ...................................................................................23

Cal. Bus. & Prof. Code
    § 1720...........................................................................................9
    § 17500.........................................................................................9

Cal. Civ. Code
    § 1559.........................................................................................21
    § 1750...........................................................................................9

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

## ISSUES TO BE DECIDED

1. Did Plaintiffs agree to arbitration?

2. Should Plaintiffs be compelled to arbitrate the claims at issue in this litigation on an individual basis?

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

## I.    INTRODUCTION.

Plaintiff Dylan Dawson ("Dawson") alleges that he placed an order on Defendant Target Corporation's ("Target") mobile app. (First Amended Complaint ("FAC"), Dkt. No. 1-8, ¶ 50.) He alleges that Target charged an undisclosed "additional delivery fee in the form of a $3.99 CA Shopper Benefits Fee, despite its representation that Plaintiff Dawson would be charged a flat delivery fee of $9.99." (*Id.*, ¶ 51.)

Like everyone else who shops at Target online or through the app, Dawson first created an online account with Target. Dawson's customer account creation, as well as Dawson's purchase in Target's app, is subject to Target's Terms & Conditions, which Dawson agreed to several times when transacting business with Target. Under the parties' agreement: (1) all disputes arising from, related to, or connected in any way with use of the website are to be arbitrated; (2) all disputes related to the validity or enforceability of the arbitration provision are delegated to an arbitrator; and (3) arbitration is to proceed on an individual, non-class basis.

Other courts examining disputes arising under the same transaction process and Terms & Conditions have compelled class action plaintiffs to arbitrate on an individual, non-class basis. *See, e.g.*, *Maybaum v. Target Corp.*, No. 22-00687, 2022 WL 1321246 (C.D. Cal. May 3, 2022). This Court should, respectfully, reach the same conclusion and compel Dawson to arbitrate on an individual, non-class basis.

With respect to Plaintiff Jamie Brown ("Brown"), Brown does not appear to have a claim against Target, but rather Shipt. Shipt's Terms of Service also require arbitration; and to the extent Brown purports to bring claims against Target even though she alleges having used Shipt's app directly, then Target may invoke Shipt's arbitration terms as against Brown. *See supra*. Target also reserves the right to bring additional motions to compel Plaintiffs' claims to arbitration should Plaintiffs' claims change or additional facts warrant.

## II.    RELEVANT BACKGROUND.

### A.    The Plaintiffs' Allegations.

Dawson alleges that on June 14, 2024, Dawson placed an order for same day delivery on the Target app, to be delivered by Defendant Shipt, Inc. ("Shipt"). (*Id.*, ¶ 51.) Dawson says that Dawson

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

1  understood that Dawson would be charged a $9.99 flat rate delivery fee for his purchase. (*Id.*)

2  However, Dawson alleges that Dawson was charged an additional delivery fee in the form of a $3.99

3  CA Shopper Benefits Fee. (*Id.*, ¶ 52.) According to Dawson, had the CA Shopper Benefits Fee been

4  disclosed, Dawson "would have made a different choice" with respect to whether to use Target for

5  his purchase. (*Id.*, ¶ 52.)

6       Brown alleges that on October 15, 2022, she purchased a One-Year Shipt membership. (*Id.*,

7  ¶ 53.) "Shortly thereafter," Brown alleges that she placed an order for same day delivery on the

8  Shipt app, to be delivered by Shipt that same day. (*Id.*) Brown states that she understood that she

9  would not be charged a delivery fee for her order. (*Id.*) However, Brown alleges that she was charged

10  an additional delivery fee in the form of a $3.99 CA Shopper Benefits Fee. (*Id.*, ¶ 54.) According to

11  Brown, had the CA Shopper Benefits Fee been disclosed, she "would have made a different choice"

12  with respect to whether to use Shipt for her delivery purchase. (*Id.*, ¶ 55.)

13       Plaintiffs seek to represent a class of "[a]ll consumers in California who, within the

14  applicable statute of limitations preceding the filing of this action to the date of class certification,

15  paid a CA Shopper Benefits Fee to Shipt and/or Target." (*Id.*, ¶ 56.)

16       Plaintiffs assert claims for violation of California's Unfair Competition Law, Cal. Bus. &

17  Prof. Code § 1720 *et seq.* ("UCL"), violation of California's s Consumer Legal Remedies Act, Cal.

18  Civ. Code § 1750 *et seq.* ("CLRA"), violation of California's False Advertising Law, Cal. Bus. &

19  Prof. Code § 17500, *et seq.* ("FAL"), and common law unjust enrichment. (*Id.*, ¶¶ 78-116.)

20       Plaintiffs seek injunctive relief, disgorgement and restitution, compensatory damages,

21  punitive damages, attorneys' fees and costs, and pre-judgment interest. (*Id.*, Prayer.)

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

**B.      Dawson's Dealings with Target.**

As a Target app and website user, Dawson was presented with and accepted Target's Terms & Conditions. First, before a user can place an order in the Target app, the user must create, or sign-in to, a Target account. (Declaration of Allison Yem ("Yem Decl."), ¶ 6.) At all times relevant herein, in order to create an account, each user was presented with a hyperlink to, and asked to accept, the Terms & Conditions in a conspicuous place directly above the button to proceed:



(*Id.*, ¶ 10.)

///

///

///

///

///

///

///

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

Second, at all relevant times, each time that a user signed-in to the user's Target account, the user was presented with a page which conspicuously states, "[b]y signing in, you agree to the following:" immediately followed by a hyperlink to Target's Terms and Conditions:



(*Id.*, ¶ 12.)

Third, at all relevant times, on the checkout page, in a conspicuous area above the button to place an order, each user was presented with a hyperlink to, and asked to accept, the Terms & Conditions in order to proceed [*image on next page*]:

///

///

///

///

///

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

(*Id.*, ¶ 16.)

Dawson was presented with the hyperlinked Terms & Conditions, during each of the above processes, regardless of the device or platform used. (*Id.*, ¶ 18.)

**C.     The Applicable Terms and Conditions.**

At all relevant times, the following language appeared at the top of the Terms & Conditions, in bold font:

> **Please read the following Terms & Conditions carefully as they affect your legal rights. These Terms & Conditions contain an arbitration agreement that requires the use of arbitration on an individual basis to resolve disputes rather than jury or any other court proceedings, or class actions of any kind. The arbitration agreement is set forth in the '<u>Arbitration Agreement</u>' section below.**

///

///

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

(*Id.*, ¶ 17, Ex. A, p. 1.) The underlined reference to the "Arbitration Agreement" contained a hyperlink, which takes the user to the section of the Terms & Conditions containing the rest of the Arbitration Agreement.

At all relevant times, the Terms & Conditions have provided that certain disputes and the enforceability of the Terms & Conditions are to be arbitrated:

- Agreement to Binding Arbitration

    You and Target agree that in the event of any claim, dispute, or controversy (whether in contract, tort, statute, or otherwise) arising out of, relating to, or connected in any way with (1) the site or (2) the breach, enforcement, interpretation, application, or validity of these Terms & Conditions, such claim, dispute or controversy will be resolved exclusively by final and binding arbitration, except as otherwise set forth in these Terms & Conditions (the 'Arbitration Agreement').

(*Id.*, p. 19.) At all relevant times, the agreement also has provided that any arbitration would be conducted under the rules of the AAA. (*Id.*, p. 20.)

At all relevant times, at the beginning of the section containing the arbitration agreement, the Terms & Conditions advised, in bold print: "**Please read this section carefully. Except as the Terms & Conditions otherwise provided, you waive your rights to try any claim in court before a judge or jury and to bring or participate in any class, collective, or other representative action.**" (*Id.*, p. 19.)

At all relevant times, in addition to the class waiver at the top of Terms & Conditions as quoted above, the Terms & Conditions provided:

- Jury Trial & Class Action Waiver

    Except as the Terms & Conditions otherwise provide, you and Target acknowledge and agree that you are each waiving the right to a trial by jury. The parties further agree that any arbitration shall be conducted in their individual capacities and not as a class action or other representative action, and the parties expressly waive their right to file a class action or seek relief on a class basis. You and Target may not be plaintiff s or class members in any purported class, collective, or representative proceeding, and may each bring claims against the other only in your or its individual capacity. The arbitrator may award declaratory or injunctive relief only on an individual basis and only to the extent necessary to provide relief warranted by the individual claim.

(*Id.*, p. 20.)

///

At all times relevant herein, the Terms & Conditions have been governed by the Federal Arbitration Act ("FAA") and the laws of Minnesota:

> The Arbitration Agreement evidences a transaction in interstate commerce and thus the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ('FAA'), will govern the interpretation and enforcement of this section. If the FAA is found not to apply to any issue that arises under this section or the enforcement of the Arbitration Agreement, then that issue shall be resolved under the laws of the State of Minnesota…
>
> Except as set forth in the Arbitration Agreement section above, all matters relating to your access to or use of the site and all matters arising out of or related to these Terms & Conditions, will be governed by the applicable laws of the United States of America and the laws of the State of Minnesota, without regard to Minnesota's choice of law principles.[1]

(*Id.*, p. 20.)

## III. LEGAL STANDARD.

This Court recently summarized the legal standard for a motion to compel arbitration, as follows:

> A party bound to an arbitration agreement that falls within the scope of the Federal Arbitration Act ("FAA") may bring a motion to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3-4; *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The Ninth Circuit has interpreted Section 3 of the FAA to grant courts the discretion to stay or dismiss claims that are subject to arbitration agreements. *See Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000) (dismissing claim under Federal Rule of Civil Procedure 12(b)(6) where determination of the claim was "barred by [a] valid and enforceable arbitration clause"); *see also Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) ("If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed."). That said, there is a "preference for staying an action pending arbitration rather than dismissing it." *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014).
>
> The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a trial court's role in assessing arbitrability is "limited." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In assessing a motion to compel

---

[1] At all relevant times, the Terms & Condition also provided: "Unless you and Target agree otherwise, in the event that it is determined or these Terms & Conditions provide that a claim should not proceed through arbitration, you agree that any claim or dispute (with the exception of a claim or dispute appropriately lodged in any small claims court in the United States of America) shall be resolved in the United States District Court for the District of Minnesota, and you submit to the personal jurisdiction of that court." If this Court determines that Dawson's claim should not proceed through arbitration, Target reserves the right to seek transfer to the District of Minnesota.

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

arbitration, a court must first "resolve any challenge that an agreement to arbitrate was never formed" and then "resolve any challenge directed specifically to the enforceability of [a] delegation clause." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). A delegation clause assigns "gateway questions of arbitrability" to the arbitrator, including whether a particular dispute arises out of the parties' agreement. *Id.* Where there is a valid delegation clause, the court must compel arguments about the scope or enforceability of the arbitration provision to the arbitrator. *Id.*

Since arbitration is "strictly a matter of consent," a court may only order arbitration of a particular claim "where the court is satisfied that the parties agree to arbitrate *that dispute*." *Granite Rock Co. v. Int'l B'hd of Teamsters*, 561 U.S. 287, 297, 299 (2010) (emphasis in original). Relatedly, the FAA does not authorize a court to compel arbitration of issues or parties not covered in the arbitration agreement. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 280 (2002); *see AT&T Techs., Inc.*, 475 U.S. at 648 (citation omitted) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"); *Walsh v. Arizona Logistics, Inc.*, 998 F.3d 393, 395 (9th Cir. 2021) ("[T]he FAA ... does not provide that agreements to arbitrate are enforceable against nonparties").

When parties dispute the scope of the arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). However, the court should deny a motion to compel arbitration if "it may be said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650.

*SolarPark Korea Co. v. Solaria Corp.*, No. 23-01181, 2023 WL 4983159, at *13 (N.D. Cal. Aug. 2, 2023), *appeal dismissed*, No. 23-16150, 2023 WL 9860831 (9th Cir. Sept. 28, 2023) (Martínez-Olguín, J.).

In addition, in the context of class actions, "the availability of class arbitration is a gateway issue that a court must presumptively decide" unless the arbitration agreement clearly and unmistakably delegates that issue to the arbitrator. *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1057 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2856 (2021). If an agreement is silent on class arbitration, a court may not permit class arbitration. *Id.*

///

///

///

///

///

IV.   **ARGUMENT.**

A.   **Dawson Agreed to Arbitrate His Claims.**

The answer to first gateway question—"whether there is an agreement to arbitrate between the parties"—is 'yes.'[2] As discussed above, in order to transact on either Target's website or app, each user must first create an account. (Yem Decl., ¶¶ 6,9.) Each user is conspicuously presented with a hyperlink to and asked to click a button to accept the Terms & Conditions as part of the account creation process. (*Id*.) In each transaction thereafter, each user is again conspicuously presented with a hyperlink to and asked to reaffirm the user's acceptance of the Terms & Conditions by clicking a button. (*Id.*, ¶¶ 12-16.) Dawson went through this process when Dawson created an account, and again when Dawson made the purchase on June 14, 2024, which forms the basis of Dawson's claims in this action. (*Id.*, ¶¶ 17-18.)

Because the Terms & Conditions were conspicuously presented to Dawson and Dawson was asked to click a button to accept the Terms & Conditions when Dawson created an account, logged in to an account, and each time Dawson transacted online, the Terms & Conditions are akin to clickwrap.[3] *Jones v. Experian Info. Sols., Inc.*, No. 23-3887, 2025 WL 227198, at *2 (D. Minn. Jan. 7, 2025) (finding that an agreement was formed and compelling arbitration where "the notification and hyperlink to the Terms of Use were clear, conspicuous, next to one another, and not hard to find or placed in small font at the bottom of the page."); *Oberstein v. Live Nation Ent., Inc.*, No. 20-3888, 2021 WL 4772885, at *6 (C.D. Cal. Sept. 20, 2021) (enforcing agreement where "[t]he text

---

[2] As discussed herein, there is no reasonable dispute that Dawson agreed to the Terms & Conditions. However, to the extent there is such a dispute, Minnesota law governs because of the Minnesota choice of law provision in the document. (Yem Decl., Ex. A, p. 20.) For completeness, and since the outcome would be the same under both Minnesota contract law and California contract, Target provides parallel citations to Minnesota contract law and California contract law in this brief.

[3] Unlike a clickwrap agreement, which is almost always enforceable, a browsewrap agreement occurs where "a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen" such that it "does not require the user to manifest assent to the terms and conditions expressly," and instead the user "gives his assent [to the terms and conditions] simply by using the website." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (internal quotation marks and citation omitted). Browsewrap agreements are nevertheless enforceable where the user had knowledge of the agreement. *Id.* at 1176-77; *see also Jones*, 2025 WL 227198, at *2 ("Web-based agreements … are generally upheld so long as reasonable notice has been provided that a click will manifest assent to the agreement.")

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

1    linking to the TOU is placed conspicuously close to the buttons that the users are required to press

2    to sign up, sign in, or complete a purchase.").

3          It matters not whether Dawson read the Terms & Conditions before signing up and before

4    transacting. What matters is that the Terms & Conditions were conspicuously presented to

5    Dawson—both at the account creation stage, log in stage, and before Dawson transacted with

6    Target—and Dawson proceeded anyway. *See Gartner v. Eikill*, 319 N.W.2d 397, 398 (Minn. 1982)

7    ("[A] person who signs a contract may not avoid it on the ground that he did not read it or thought

8    its terms to be different."); *Bolanos v. Khalatian*, 231 Cal. App. 3d 1586, 1590 (Cal. Ct. App. 1991)

9    (holding that when a person signs an instrument, the person "may not avoid its terms on the ground

10    he failed to read it before signing it.").

11          Dawson did not present, during the parties' meet and confer discussion, and cannot present

12    any evidence that Dawson did not receive the Terms & Conditions. In fact, Dawson separately,

13    through his attorneys, <u>served an arbitration demand letter to Target before and after initiating this</u>

14    <u>class action</u>. *See* Tagvoryan Decl. ¶¶ 2-3; 5-6. Dawson agreed to arbitration.

15        **B.**      **The Parties Delegated Arbitrability to the Arbitrator.**

16          The Court should compel Dawson to arbitrate the arbitrability of Dawson's claims because

17    the Terms & Conditions contain two separate provisions which evidence the parties' clear and

18    unmistakable intent to delegate arbitrability.

19          First, the Terms & Conditions contain an express delegation provision, which states that "in

20    the event of any claim, dispute, or controversy … arising out of, relating to, or connected in any

21    way with … the breach, enforcement, interpretation, or validity of these Terms & Conditions, such

22    claim, dispute or controversy will be resolved exclusively by final and binding arbitration…." (Yem

23    Decl., Ex. A, p. 19.) Courts have found that this exact language in this exact contract constitutes

24    clear and unmistakable evidence of an agreement to arbitrate arbitrability. *Maybaum*, 2022 WL

25    1321246, at *5 ("[T]he arbitration mandates arbitration of 'the breach, enforcement, interpretation,

26    application, or validity' of the agreement. Terms & Conditions. This language unmistakably

27    delegates arbitrability to the arbitrator by including the term 'validity.'"); *Portland Gen. Elec. Co.*

28    *v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (construing similar language).

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

Second, the agreement incorporates the AAA rules: "The arbitration will be conducted under the then current rules of the AAA." (Yem Decl., Ex. A, p. 20.) The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). This is in part because the AAA rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the … validity of the arbitration agreement." *Id*.

Moreover, in this Circuit, there is no requirement that "contracting parties be sophisticated … before a court may conclude that incorporation of the AAA rules" adequately demonstrates the parties' intent to delegate. *Id.* (affirming dismissal of employee's wrongful termination lawsuit because of arbitration clause incorporating AAA rules); *see also Maybaum*, 2022 WL 1321246, at *5 (observing that "the majority of courts have concluded that *Brennan* applies equally to sophisticated and unsophisticated parties.").[4]

Finally, even questions of the enforceability of the arbitration agreement are delegated to the arbitrator by incorporation of the arbitration rules. *Brennan*, 796 F.3d at 1131 (holding that a

---

[4] Although the contract at issue in *Brennan* was an at-will employment contract between sophisticated parties, *Brennan* cautioned that its holding does not "foreclose the possibility that this rule could also apply to unsophisticated parties," observing that "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties." 796 F.3d at 1130-31. Nonetheless, the court limited this holding to the facts of the case, which involved an arbitration agreement between "sophisticated" parties. *Id.* Since then, only a minority of district courts have questioned whether *Brennan* applies when one of the parties is "unsophisticated." *See, e.g.*, *Ingalls v. Spotify USA, Inc.*, No. 16-03533, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016). However, most courts, and especially courts in recent years, have found this consideration to be irrelevant. *Torres v. Secure Commc'n Sys., Inc.*, No. 20-00980, 2020 WL 6162156, at *4 (C.D. Cal. July 25, 2020) (noting that "the majority of courts … find[ ] that although the facts in *Brennan* were limited to sophisticated parties, it applies similarly to non-sophisticated parties."); *Acosta v. Brave Quest Corp.*, 733 F. Supp. 3d 920, 928 (C.D. Cal. 2024) ("The thrust of the holding in *Brennan* logically extends to the sophisticated and unsophisticated alike. Either the text of the contract is clear and unmistakable, or it is not… While the sophistication of a party may be relevant to the party's subjective understanding of the meaning of the agreed-upon language in the contract, it is not material when deciding the question whether the agreed-upon text objectively manifests a clear and unmistakable intent.").

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

plaintiff's argument that an agreement is unconscionable, and thus unenforceable, was a question for the arbitrator to decide where the agreement incorporated the AAA rules).

Here, in addition to expressly delegating arbitrability, by incorporating the AAA rules, the parties clearly and unmistakably delegated the question of arbitrability, including such things as scope of the arbitration clause and enforceability of the agreement, to the arbitrator. As such, the arbitrator is the only party who may decide if the dispute is arbitrable. *SolarPark Korea Co.*, 2023 WL 4983159, at *15 (holding, where there was a delegation clause, that "the scope of the arbitration agreement is a question for the arbitrator and is not appropriate for this Court to consider.").

### C.    Arbitration Should Proceed on an Individual Basis.

The Court should answer the third gateway question by compelling arbitration on an individual basis because the arbitration provision does not contemplate class arbitration. As the Supreme Court has repeatedly observed, "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). After all, in a class action, "[t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010) (citation omitted). Given the fundamental differences between individual arbitrations and class arbitrations, the Supreme Court recently held that "[n]either silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself," *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019), namely, "the individualized form of arbitration envisioned by the FAA," *id.* at 1416.

In this instance, at the top of the agreement and in bold print, the Terms & Conditions advise:

> **Please read the following Terms & Conditions carefully as they affect your legal rights. <u>These Terms & Conditions contain an arbitration agreement that requires the use of arbitration on an individual basis to resolve disputes rather than jury or any other court proceedings, or class actions of any kind.</u> The arbitration agreement is set forth in the 'Arbitration Agreement' section below.**

(Yem Decl., Ex. A, p. 1 (underline added).)

At the beginning of the section containing the arbitration agreement, the Terms & Conditions again advise, in bold print: "**Please read this section carefully. Except as the Terms & Conditions otherwise provided, <u>you waive your rights</u> to try any claim in court before a judge or jury and <u>to bring or participate in any class, collective, or other representative action.</u>**" (*Id.*, Ex. A, p. 19 (underline added).)

Later, under the heading "Jury Trial & Class Action Waiver," the Terms & Conditions provide:

> Except as the Terms & Conditions otherwise provide, you and Target acknowledge and agree that you are each waiving the right to a trial by jury. The parties further agree that <u>any arbitration shall be conducted in their individual capacities and not as a class action or other representative action, and the parties expressly waive their right to file a class action or seek relief on a class basis. You and Target may not be plaintiffs or class members in any purported class, collective, or representative proceeding, and may each bring claims against the other only in your or its individual capacity</u>. The arbitrator may award declaratory or injunctive relief only on an individual basis and only to the extent necessary to provide relief warranted by the individual claim.

(*Id.*, Ex. A, p. 20 (underline added).)

All of the foregoing provisions clearly and expressly preclude class arbitration. *See Salberg v. Massage Green Int'l Franchise Corp.*, No. 15-02805, 2016 WL 3667154, at *1, *3 (S.D. Cal. July 11, 2016) (compelling arbitration on an individual basis where agreement provided, "By signing this agreement, I am agreeing to waive any substantive or procedural rights that I may have to bring an action on a class or collective basis.").

Even without this express language, arbitration would still be required to take place on an individual basis because Dawson and Target (and Shipt) did not contractually agree to class arbitration. *See, e.g.*, *Falls v. Soulbound Studios, LLC*, No. 21-00961, 2021 WL 4295137, at *4 (C.D. Cal. July 6, 2021) ("[B]ecause the arbitration provision does not expressly provide for class arbitration, the Court compels individual arbitration.") (internal citation omitted). Thus, the Court should compel individual arbitration pursuant to the Terms & Conditions.

### D.    Target is an Intended Beneficiary of Shipt's Arbitration Agreement.

Plaintiffs' allege that Dawson only transacted with Target. (*See* FAC, ¶ 50 ("Plaintiff Dawson placed an order for same day delivery on the Target App, to be delivered by Shipt.").) And

1    Brown only transacted with Shipt. (*See id.*, ¶ 53 ("Plaintiff Brown purchased a One-Year Shipt

2    membership. Shortly thereafter, she placed an order for same day delivery on the Shipt App, to be

3    delivered by Shipt that same day.").) Nevertheless, Plaintiffs sued Target and Shipt, collectively;

4    and, both Plaintiffs assert each claim against Defendants as a group. Ostensibly, this is just sloppy

5    drafting by counsel, as Dawson provides no reason in the FAC why Dawson has a claim against

6    Shipt, and Brown provides no reason in the FAC why Brown has a claim against Target.[5] However,

7    out of an abundance of caution, and in case Brown actually alleges that Target is responsible,

8    Brown's claims would still be subject to arbitration.

9          Brown alleges that "Target owns and operates Shipt." (SAC, ¶ 2.) Shipt's Terms of Service,

10    which Brown is subject to as per the separately filed Motion to Compel Arbitration by Shipt, state

11    as follows with respect to arbitration of disputes, in bold font:

12          **Arbitration of Disputes – Please Read . You and Shipt mutually agree to
             resolve any justiciable disputes, past, present or future, between the
13          Parties, or between you and any of Shipt employees, agents, parents,
             subsidiaries, affiliates, successors, or assigns, exclusively through final and
14          binding arbitration instead of a court or jury trial.**

15    *See Owumi Decl. filed in support of Shipt's Motion to Compel.*  Because the arbitration agreement

16    extends to "parents" of Shipt, Brown also formed an agreement to arbitrate with Target.

17          Even if Target was not expressly included as a party to the agreement with Shipt, Target

18    would be able to enforce the arbitration provision in the Terms of Service. An intended third-party

19    beneficiary of a contract may enforce a contract, even if it is not a signatory to the contract. *See*

20    *Buchman Plumbing Co. v. Regents of the Univ. of Minn.*, 298 Minn. 328, 215 N.W.2d 479, 483

21    (1974) (a party that is a stranger to a contract may nonetheless assert a contractual claim if it is a

22    "third-party beneficiary," i.e., if the contract was made for that party's benefit); Cal. Civ. Code §

23    1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any

24    time before the parties thereto rescind it."). Courts are to look to the purpose of the contract to

25    determine if a party is an intended beneficiary; there is no requirement that the contract expressly

26    _____

27    [5] Nor would there be any such reason. That Target had Shipt deliver Dawson's Target order (FAC,
     ¶50) or that Target owns Shipt (*id.*, ¶ 2) is meaningless. Dawson does not allege that Shipt itself
28    made any misrepresentations in Target's app, and Brown does not allege that Target made any
     misrepresentations in Shipt's app or otherwise.

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

name the third party. *See Dayton Dev. Co. v. Gilman Fin. Servs., Inc.*, 299 F. Supp. 2d 933, 937 (D. Minn. 2003), *aff'd*, 419 F.3d 852 (8th Cir. 2005) ("The intent to benefit test generally requires that 'the contract must express some intent by the parties to benefit the third party through contractual performance.' … The absence of the third party's name, however, does not preclude a finding of intent to benefit 'if the circumstances show otherwise.'") (citations omitted); *Marina Tenants Assn. v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 128 (Ct. App. 1986) ("However, it is not necessary that the contract identify or refer to the third party by name; it is sufficient if it can be shown that the claimant is of a class of persons for whose benefit it was made.").

In the arbitration context, a nonsignatory can enforce an arbitration agreement as a third-party beneficiary. *In re Petters Co., Inc.*, 480 B.R. 346, 361 (Bankr. D. Minn. 2012) (observing that under Minnesota law a nonsignatory to a contract can compel arbitration under theories of equitable estoppel, agency, and third-party beneficiary); *Comer*, 436 F.3d at 1101. Third-party beneficiaries may enforce an arbitration clause if the contracting parties intended the third party to directly benefit from the contract. *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 356 (Minn. 2003); *Lap-ping Chen v. BMW of N. Am., LLC*, No. 21-03531, 2021 WL 3604691, at *3 (N.D. Cal. Aug. 13, 2021) ("In order to compel arbitration as an intended third-party beneficiary, the nonsignatory must show that 'the contract reflects the express or implied intention of the parties to the contract to benefit the third party.'") (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000)).

To the extent the FAC could be interpreted as Brown alleging a claim against Target, Target is clearly an intended beneficiary of the Terms of Service. But for the Plaintiffs' allegations that Target owns Shipt and that Shipt fulfilled Brown's Target order, Brown would have no claim at all. It is obviously foreseeable that if a Shipt user sues Target for orders placed on the Shipt app, that Target would enforce the arbitration provision in the Terms of Service. Brown cannot seriously dispute that the Terms of Service were not intended to benefit Target, when Target is included in the arbitration agreement, as a parent.

///

///

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**

### E.    The Court Should Stay the Instant Litigation.

The FAA requires a court to stay proceedings until the parties have conducted arbitration proceedings. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."). Accordingly, the Court should stay this action pending the outcome of the individual, non-class arbitration.

## V.    CONCLUSION.

For the foregoing reasons, the Court should grant this Motion and order that Plaintiffs arbitrate their claims on an individual, non-class basis. Additional arbitration-related arguments as to Plaintiffs' claims may arise if the claims and facts progress, and Target reserves the right to bring further motions to compel arbitration as well. Defendants have also filed motions to dismiss *in the alternative* to their arbitration arguments, which shall not form any basis for waiver of such arbitration arguments and the Defendants' objections to this Court's jurisdiction.

DATED:  February 7, 2025                 BLANK ROME LLP


By: /s/ Ana Tagvoryan
               Ana Tagvoryan
               Victor J. Sandoval
Attorneys for Defendants
TARGET CORPORATION and SHIPT, INC.

**TARGET CORPORATION'S MOTION TO COMPEL ARBITRATION**