**KALIELGOLD PLLC**
Sophia G. Gold (SBN 307971)
*sgold@kalielgold.com*
490 43rd Street, No. 122
Oakland, California 94609
Tel: (202) 350-4783

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
Amanda J. Rosenberg (SBN 278507)
*arosenberg@kalielgold.com*
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783

**EDELSBERG LAW, P.A.**
Scott Edelsberg (SBN 330990)
*scott@edelsberglaw.com*
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DYLAN DAWSON, on behalf of himself and all others similarly situated, | Case No. 3:24-cv-08167-AMO |
| Plaintiff, | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | Hon. Araceli Martinez-Olguin |
| TARGET CORPORATION, SHIPT, INC., and DOES 1- 50, inclusive, | [DEMAND FOR JURY TRIAL] |
| Defendant. | |

Plaintiff DYLAN DAWSON, on behalf of himself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through his attorneys as follows:

## NATURE OF ACTION

1.      This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendants Target Corporation ("Target") and Shipt, Inc. ("Shipt") (together, "Defendants"), arising from Defendants' deceptive promise to provide free or flat-rate delivery at artificially low rates.

2.      Shipt is a same-day delivery service that provides consumers with deliveries from various merchants, including Target. Target owns and operates Shipt and offers a Target same-day delivery service through Shipt at multiple locations throughout California.

3.      Target (through Shipt) offers monthly and annual memberships in exchange for free delivery for orders over $35. Target further advertises that orders less than $35 are subject to a flat delivery fee, and consumers using Target same-day delivery without a membership are subject to the same flat delivery fee.

4.      Thousands of Californians availed themselves of these offers and continue to do so every day.

5.      However, Defendants systematically fail to honor these promises. Instead, Defendants charge all California users a $3.99 "CA Shopper Benefits Fee" which they add to every order that is delivered in California.

6.      This fee is deceptive because (a) this fee which is tacked on to every delivery order in California (but not orders placed for pick-up in store) is, by definition, a delivery fee; (b) the fee is surreptitiously added to consumers' carts; and (c) the fee is designed to look like a government imposed fee or tax, when it is neither.

7.      Plaintiff and other class members relied on Defendants' promise of free or flat rate delivery and were injured by Defendants' practices. Plaintiff brings this action on behalf of himself, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages,

restitution, and an injunction on behalf of the general public to prevent Defendants from continuing to engage in its illegal practices described herein.

## PARTIES

8.     Plaintiff Dylan Dawson is a citizen of the State of California who resides in the County of San Francisco, State of California.

9.     Defendants Target Corporation maintains its principal business offices in Minneapolis, Minnesota.

10.    Defendants Shipt, Inc. maintains its principal business offices in Birmingham, Alabama.

## JURISDICTION AND VENUE

11.    The State of California has personal jurisdiction over the Defendants named in the action because Defendants are authorized to conduct and do conduct business in this State. Defendants maintain sufficient minimum contacts in California, and/or otherwise intentionally avail themselves of the California market, including in the County of San Francisco, which has caused both obligations and liability of Defendants to arise in the County of San Francisco.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here, regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

13.    Defendants contend this Court has subject matter jurisdiction of this action under the Class Action Fairness Act of 2005, § 1332(d) because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,000,000.00; (2) the proposed Class is comprised of at least 100 members; and (3) at least one  of the members of the proposed Class is a citizen of a different state than Defendant.  Plaintiff does not dispute these allegations.

## COMMON FACTUAL ALLEGATIONS

**A.    Defendants Lobbied for Proposition 22, And Then Didn't Want to Pay the Costs Associated with Its Passage**

SECOND AMENDED CLASS ACTION COMPLAINT

14.    Proposition 22 was a ballot initiative in California in the November 2020 election which aimed to exempt app-based transportation and delivery companies from AB5. AB5 would have required Shipt and other delivery companies to classify their drivers as employees rather than independent contractors. Had AB5 remained the law, all Shipt drivers would have been guaranteed a variety of extensive benefits under state law, including overtime, sick time, health care, bargaining rights, and unemployment insurance, among others.

15.    When AB5 passed in September 2019, app-based delivery companies, including Shipt, publicly protested and decried the law as incompatible with their business model.

16.    Desperate to avoid the profit-cutting implications of AB5, the app-based delivery companies devised Proposition 22.

17.    Proposition 22 aimed to exempt app-based delivery companies from the scope of AB5. But in a concession to labor advocates, and in an effort to gain public buy-in, the Proposition also provided certain minimum protections and benefits to drivers. Those protections—while not nearly as extensive as those which would have been afforded to drivers had they been deemed employees—did guarantee drivers a higher level of benefits than they had been receiving as independent contractors prior to the passage of AB5. For example, under Proposition 22, drivers would receive 120% of the local minimum wage for each hour spent driving. Shoppers would also receive limited expense reimbursement as well as a health insurance stipend, among other benefits.

18.    Shipt and other app-based delivery companies poured millions of dollars into the Proposition 22 campaign. Proposition 22 quickly became the most expensive measure in California history, with over $200 million contributed to the campaign effort.

19.    Shipt and other app-based delivery companies sold California voters on the idea that Proposition 22 was a "compromise" that would "create a third employment classification" allowing drivers "more perks than the average independent contractor but wouldn't entitle workers to the full benefits of an employee" that they otherwise would have been entitled to under AB5.[1] Proposition 22, these companies argued, was the way to ensure adequate protections to drivers, while also keeping their businesses afloat.

[1] *See* https://www.wired.com/story/uber-lyft-fight-law-say-doesnt-apply/ (last accessed October 21, 2024).

SECOND AMENDED CLASS ACTION COMPLAINT

20.     After months of extensive campaigning, advertising, and lobbying, Shipt and the other app-based delivery companies ultimately got their way, and California voters passed Proposition 22, exempting Shipt and other companies from AB5.

21.     Shortly after the passage of Proposition 22, however, Shipt faced a problem. Proposition 22—hailed as the "compromise" that would largely exempt Shipt from paying for the extensive benefits that otherwise would be required under California employment law—still required Shipt to pay for certain benefits and protections that it had not previously been covering. These benefits posed a threat to Shipt's profit margin.

22.     Despite spending millions of dollars campaigning for the passage of Proposition 22, Shipt didn't want to pay the costs associated with its passage.

23.     That is why Shipt began charging a "CA Shopper Benefits Fee." The CA Shopper Benefits Fee is $3.99 and is added to all California delivery orders. California consumers have no option to avoid paying the CA Shopper Benefits Fee.

24.     To be clear, the CA Shopper Benefits Fee is *not* a government-imposed tax or penalty, despite Defendants disguising it as such. In fact, many of Defendants' competitors—including Walmart—do not charge California consumers the CA Shopper Benefits Fee. Instead, the CA Shopper Benefits Fee is imposed by Defendants, and the funds earned from the fee are kept by Defendants.

**B.     Shipt is A Wholly Owned Subsidiary of Target.**

25.     Target is a retail corporation that operates a chain of department stores throughout the United States, including in California. Target is the seventh-largest retailer in the United States, and a component of the S&P 500 Index.

26.     Shipt is a delivery service wholly owned by Target.

27.     Target provides delivery services through its wholly owned subsidiary, Shipt.

28.     Upon information and belief, Defendants know or should know of each other's business practices. Target is aware that Shipt charges the CA Shopper Benefits Fee and Shipt, in turn, is aware of Target's marketing representations regarding the cost of delivery.

**C.      California Consumers Purchase from Target Based on the Promise of Free or**
**Flat Rate Delivery, but Defendants Fail to Honor Those Promises.**

29.      Target (through Shipt) offers monthly and annual memberships in exchange for free delivery for orders over $35. Target further advertises that orders less than $35 will have a flat delivery fee, and those without a Target membership will pay the same flat delivery fee (currently $9.99/delivery). An exemplar of Target's advertising is shown below:



30.      The foregoing promises are false. Despite Defendants' representations to the contrary, delivery is never free through Defendants, nor is it provided at the flat advertised rate. Instead, Defendants deceptively add on a "CA Shopper Benefits Fee" to all of its orders, rendering its delivery price advertisements false.

SECOND AMENDED CLASS ACTION COMPLAINT

31.     As described herein, Defendants promised free or flat rate delivery. These were clear promises that the total, marginal cost of having products delivered—that is, moved from the retailer and delivered to the consumer—was represented by the free or flat rate delivery price promise. Defendants tacks on the CA Shopper Benefits Fee regardless of the free or flat rate delivery promise made.

32.     Defendants decided they could actually charge more for delivery, thereby increasing profitability, by misrepresenting the true delivery costs to consumers.

33.     Defendants were or should have been aware that consumers were and would be deceived by the CA Shopper Benefits Fee at the same time as a promise of free or flat-rate delivery was being made.

34.     Because it is well known that American consumers prefer free or low-cost delivery costs, Defendants made an intentional decision to break delivery costs into two parts and thus disguise their decision to charge more for delivery.

35.     The CA Shopper Benefits Fee is a delivery fee. As indicated by its name, the CA Shopper Benefits Fee is used to pay drivers for the benefits they are afforded under Proposition 22. A fee that is tacked on to every order to compensate drivers in exchange for their delivery of goods is, by definition, a delivery fee. Notably, this same fee is not charged on orders placed for in-store pick-up at Target stores. This renders false Defendants' promise of free or flat, low-cost delivery fee.

36.     Thousands of Californians availed themselves of Defendants' offers and continue to do so every day.

37.     The CA Shopper Benefits Fee undermines Defendants' promise to provide free or flat rate delivery and amounts to a bait & switch.

38.     In luring consumers into making purchases based on the promise of free or flat rate delivery, and then reneging on that promise by adding a CA Shopper Benefits Fee to every order, Defendants deceive consumers and are unjustly enriched.

///

///

**B.    Defendants Surreptitiously Add the CA Shopper Benefits Fee to Consumers Carts, and Intentionally Name and Design it to Look Like a Government Imposed Fee**

39.    This is also a classic case of "drip pricing." Drip pricing is a pricing technique in which companies advertise only part of a product's price and reveal other charges later as the customer goes through the buying process.

40.    "Drip pricing" works because as research has shown, "our brains tend to fix on the price we first encountered even after we learn the total cost. And even when consumers learn about the hidden fees, they often pay up rather than shop around . . . because they figure that 'investing more time into searching for it will not be worthwhile.'" Santul Narkar, *It's a Great Deal, Before the 'Drip Pricing*, New York Times, available at https://www.nytimes.com/interactive/2024/02/23/business/what-is-drip-pricing.html (quoting Professor David Friedman of Willamette University).

41.    Reasonable consumers like Plaintiff understand that a delivery may necessarily incur the delivery fee disclosed. They do not understand that an additional delivery fee in the form of the CA Shopper Benefits Fee will be added to their purchase.

42.    This means that many consumers do not notice that an additional fee is being added to their order. Others believe that they have no choice but to pay this fee. And others still notice the previously undisclosed fee, but decide to go through with the purchase anyway: they have already invested substantial time and effort inputting their information into the Defendant's system. So, it doesn't make sense to start over and research whether there may be some other way to avoid the fee. There is no incentive to reverse course—there is only an incentive to pay the fee, be done with it, and avoid the burden of finding a way to avoid the fee, if the consumer can even figure out how to avoid the fee at all after navigating Defendants' checkout process. The deceptive checkout practice has done its job and diverted the sale to Defendants.

43.    By unfairly obscuring its charges to consumers, Defendants deceive consumers and gain an unfair upper hand on competitors.

44.     Further enhancing the deception, both the name and manner in which the fee is displayed is designed to give consumers the impression that the CA Shopper Benefits Fee is an unavoidable government-imposed fee or tax. To be clear, it is not. Major competitors like Walmart do not charge any such fee on California delivery orders.

45.     By attributing the fee to the state of California, and calling it a "Shopper Benefits Fee", labeling it a "Regional Fee," and grouping it in the same bucket as other fees that are required by law, Defendants impress upon consumers that the government has mandated that consumers pay such a fee. This is false.

46.     Further, by adding the CA Shopper Benefits Fee late in the checkout process alongside *actual* government-imposed taxes, Defendants give the impression that the CA Shopper Benefits Fee is a government-imposed tax or fee that consumers are required to pay by law.

47.     Thus, Defendants misrepresent that the CA Shopper Benefits Fee is a government-imposed fee similar to a tax or bag fee when it is no such thing.

48.     It was Defendants' choice alone to charge the CA Shopper Benefits Fee and pass its own obligations on to consumers in a deceptive manner as described herein.

**D.    The CA Shopper Benefits Fee is a Junk Fee That Violates Federal Guidance**

49.     Defendants' CA Shopper Benefits Fee is precisely the type of "Junk Fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

50.     As the Federal Trade Commission said recently in its effort to combat Junk Fees,

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately

9

1   disclose the nature or purpose of certain fees, leaving consumers wondering what
    they are paying for or if they are getting anything at all for the fee charged.

2   Federal Trade Commission, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit*

3   *hidden and falsely advertised fees*, , October 11, 2023, available at https://www.ftc.gov/news-

4   events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

5          51.    In July 2024, California expanded its Consumer Legal Remedies Act ("CLRA") to

6   make illegal "drip pricing," which involves advertising a price that is less than the actual price that

7   a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29).

8   Under the new California law, it is now illegal to advertise a low price for a product, only for that

9   product to be subject to additional or mandatory fees later.

10         52.    In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in

11  Digital Advertising," the FTC makes clear that when advertising and selling are combined on a

12  website, and the consumer will be completing the transaction online, the disclosures should be

13  provided before the consumer makes the decision to buy – for example, before the consumer

14  "add[s] to shopping cart." *See* Fed. Trade Comm'n, *.com Disclosures: How to Make Effective*

15  *Disclosures   in   Digital   Advertising* at ii, 14 (Mar. 2013), available at

16  https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-

17  advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

18         53.    Defendants violate federal guidance and California law by adding the CA Shopper

19  Benefits Fee as a line item after the consumer "add[s] to shopping cart." The CA Shopper Benefits

20  Fee itself is a sham, a classic "junk fee."

21      **E.    Plaintiff Dawson's Experience**

22         54.    On June 14, 2024, Plaintiff Dawson placed an order for same day delivery on the

23  Target App, to be delivered by Shipt. Based on Defendants' representations, Plaintiff Dawson

24  understood that he would be charged a $9.99 flat rate delivery fee for his purchase.

25         55.    However, Defendants charged Plaintiff Dawson an additional delivery fee in the

26  form of a $3.99 CA Shopper Benefits Fee, despite its representation that Plaintiff Dawson would

27  be charged a flat delivery fee of $9.99.

28

56.     Had Defendants disclosed the CA Shopper Benefits Fees, Plaintiff Dawson would have made a different choice with respect to whether to use Defendants for his purchases.

**CLASS ALLEGATIONS**

57.     Pursuant to Rule 23, Plaintiff brings this action on behalf of himself and a Class of similarly situated persons defined as follows:

> All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, placed an order through Target and subsequently paid a CA Shopper Benefits Fee.

58.     Excluded from the Class are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

59.     <u>Numerosity</u>:  At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

60.     <u>Commonality</u>:  There are questions of law or fact common to the Class, which include, but are not limited to the following:

       a.     Whether during the class period, Defendants deceptively represented its delivery fees;

       b.     Whether Defendants' alleged misconduct misled or had the tendency to mislead consumers;

       c.     Whether Defendants engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

SECOND AMENDED CLASS ACTION COMPLAINT

d.    Whether Defendants' alleged conduct constitutes violations of the laws asserted;

e.    Whether Plaintiff and members of the Class were harmed by Defendants' misrepresentations;

f.    Whether Defendants were unjustly enriched;

g.    Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

h.    Whether an injunction is necessary to prevent Defendants from continuing to engage in the wrongful conduct described herein.

61.    Typicality:  Like Plaintiff, many other consumers purchased from Defendants based on Defendants' representations. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member was injured by Defendants' false representations. Plaintiff and the Class have suffered the same or similar injury as a result of Defendants' false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

62.    Adequacy of Representation:  Plaintiff is committed to pursuing this action and have retained counsel competent and experienced in prosecuting and resolving consumer class actions.  Plaintiff will fairly and adequately represent the interests of the Class and do not have any interests adverse to those of the Class.

63.    Prerequisites for Injunctive Relief. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested purchasing from Defendants, provided they are actually provided with truthful pricing representations, as promised.

64.    Defendants ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

65.    Prerequisites for Damages. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class

action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**
**(Against Defendant Target Corporation)**

66.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

67.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Target's conduct related to deceptively representing that it would provide free or flat rate delivery violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

68.     The UCL imposes strict liability. Plaintiff need not prove that Target intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

69.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

70.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

71.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

72.     Target committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting on its

website and mobile app that it would provide free or flat rate delivery, when, in reality, they add a delivery fee through the assessment of the CA Shopper Benefits Fee to every order.

73.    Moreover, Target committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting the nature of the CA Shopper Benefits Fee and specifically by providing the false impression that it is an unavoidable government imposed-fee or tax, when it is not.

74.    Target's acts and practices are unfair and offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

75.    The harm to Plaintiff and the Class outweighs the utility of Target's practices. There were reasonably available alternatives to further Target's legitimate business interests, other than the misleading and deceptive conduct described herein.

76.    Target's conduct also constitutes an "unlawful" act under the UCL because, as detailed herein, Defendant violates the CLRA and FAL.

77.    Target's business practices are fraudulent insofar as they have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

78.    Plaintiff relied on the misrepresentations about the delivery fees, believing he would receive flat rate delivery as promised, and believing the fees were government-imposed.

79.    By falsely marketing free or flat rate delivery, Target deceived Plaintiff and Class members into purchasing from Target, only to renege on that promise by charging a CA Shopper Benefits Fee. Target's conduct amounted to a bait & switch.

80.    Had Plaintiff known the truth, he would not have purchased from Target or would not have ordered delivery from Target.

81.    As a direct and proximate result of Target's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Target's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into purchasing from Target under the false belief that they will receive free or flat rate delivery at the advertised price.

82.     As a result of its unfair, fraudulent, and unlawful conduct, Target has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

83.     Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Target from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

84.     Plaintiff have no adequate remedy at law in part because Target's conduct is continuing. Plaintiff may seek to order delivery from Target again in the future, but cannot rely on their promise of free or flat rate delivery. Plaintiff therefore seek an injunction on behalf of the general public to prevent Target from continuing to engage in the deceptive and misleading practices described herein.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**
**(Against Defendant Shipt)**

85.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

86.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Shipt's conduct related to charging a CA Shopper Benefits Fee violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

87.     The UCL imposes strict liability. Plaintiff need not prove that Shipt intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

88.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

89.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

90.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

91.     Shipt committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting the nature of the CA Shopper Benefits Fee and specifically by providing the false impression that it is an unavoidable government imposed-fee or tax, when it is not.

92.     Moreover, Shipt committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* because it is jointly and severally liable for Target's misrepresentations on its website and mobile app because Shipt was aware, or should have been aware, that Target advertised it would provide free or flat rate delivery, when, in reality, Shipt knew it added a delivery fee through the assessment of the CA Shopper Benefits Fee to every order.

93.     Shipt's acts and practices are unfair and offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

94.     The harm to Plaintiff and the Class outweighs the utility of Shipt's practices. There were reasonably available alternatives to further Shipt's legitimate business interests, other than the misleading and deceptive conduct described herein.

95.     Shipt's conduct also constitutes an "unlawful" act under the UCL because, as detailed herein, Defendant violates the CLRA and FAL.

96.     Shipt's business practices are fraudulent insofar as they have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

97.     Plaintiff relied on the misrepresentations about the delivery fees, believing he would receive flat rate delivery as promised, and believing the fees were government-imposed.

98.     As a direct and proximate result of Shipt's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Shipt's

fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into purchasing from Target under the false belief that they will receive free or flat rate delivery at the advertised price, and deceived into paying a CA Shopper Benefits Fee they were misled into believing was government-imposed.

99.    As a result of their unfair, fraudulent, and unlawful conduct, Shipt have been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

100.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Shipt from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

101.    Plaintiff have no adequate remedy at law in part because Shipt's conduct is continuing. Plaintiff may seek to order delivery from Shipt again in the future, but cannot rely on their promise of free or flat rate delivery. Plaintiff therefore seek an injunction on behalf of the general public to prevent Shipt from continuing to engage in the deceptive and misleading practices described herein.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(Against Defendant Target Corporation)**

102.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

103.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*  Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Target's sale of products to consumers for delivery ordered through their websites or mobile apps were "transactions" within the meaning of California Civil Code § 1761(e). Target's delivery service is a "service" within the meaning of California Civil Code § 1761(b).

104.    Target violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class

1  which were intended to result in, and did result in, the sale of products through Target's delivery

2  service:

3          a.      "Representing that goods or services have . . . characteristics . . . that they

4     do not have" (a)(5);

5          b.      "Advertising goods or services with intent not to sell them as advertised"

6     (a)(9);

7          c.      "Representing that a transaction confers or involves rights, remedies, or

8     obligations that it does not have or involve, or that are prohibited by law" (a)(14); and

9          d.      "Advertising that a product is being offered at a specific price plus a specific

10    percentage of that price unless (A) the total price is set forth in the advertisement, which

11    may include, but is not limited to, shelf tags, displays, and media advertising, in a size

12    larger than any other price in that advertisement, and (B) the specific price plus a specific

13    percentage of that price represents a markup from the seller's costs or from the wholesale

14    price of the product" (a)(20).

15    105.   Specifically, Target advertised to customers that it would provide free or flat rate

16 delivery to consumers, when, in reality, it adds a delivery fee through the assessment of the CA

17 Shopper Benefits Fee to every order.

18    106.   By falsely marketing free or flat rate delivery, Target deceived Plaintiff and Class

19 members into purchasing from Target, only to renege on that promise by charging a CA Shopper

20 Benefits Fee. Target's conduct amounted to a bait & switch.

21    107.   Moreover, Target affirmatively and knowingly misrepresented the nature of the CA

22 Shopper Benefits Fee by providing the false impression that it is an unavoidable government

23 imposed-fee or tax, when it is not.

24    108.   Target continues to violate the CLRA and continues to injure the public by

25 misleading consumers about its delivery fees. Accordingly, Plaintiff seek injunctive relief on

26 behalf of the general public to prevent Target from continuing to engage in these deceptive and

27 illegal practices. Otherwise, Plaintiff, the Class members, and members of the general public may

28 be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

109.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

110.    Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Target in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Target's intent to act. Now, Plaintiff seeks actual, punitive and statutory damages, as appropriate against Defendant.

**FOURTH CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, _et seq._)**
**(Against Defendant Shipt)**

111.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

112.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, _et seq._  Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Shipt's sale of products to consumers for delivery ordered through their websites or mobile apps were "transactions" within the meaning of California Civil Code § 1761(e). Shipt's delivery service is a "service" within the meaning of California Civil Code § 1761(b).

113.    Shipt violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of products through Shipt's delivery service:

      e.    "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

      f.    "Advertising goods or services with intent not to sell them as advertised" (a)(9);

      g.    "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14); and

SECOND AMENDED CLASS ACTION COMPLAINT

h.     "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20).

114.     Specifically, Shipt affirmatively and knowingly misrepresented the nature of the CA Shopper Benefits Fee by providing the false impression that it is an unavoidable government imposed-fee or tax, when it is not.

115.     Moreover, Shipt is jointly and severally liable for Target's misrepresentations on its website and mobile app because Shipt was aware, or should have been aware, that Target advertised it would provide free or flat rate delivery, when, in reality, Shipt knew it added a delivery fee through the assessment of the CA Shopper Benefits Fee to every order.

116.     Shipt continues to violate the CLRA and continues to injure the public by misleading consumers about its delivery fees. Accordingly, Plaintiff seek injunctive relief on behalf of the general public to prevent Shipt from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the Class members, and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

117.     In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

118.     Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Shipt in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Shipt's intent to act. Now, Plaintiff seeks actual, punitive and statutory damages, as appropriate against Defendant.

///

///

SECOND AMENDED CLASS ACTION COMPLAINT

**FIFTH CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Business & Professions Code §§ 17500, *et seq*.)**
**(Against Defendant Target Corporation)**

119.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

120.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent ... to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

121.    Target's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

122.    Target knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

123.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Target from continuing to engage, use, or employ their practice of misrepresenting their delivery fees.

124.    Further, Plaintiff and the members of the Class seek an order requiring Target to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Target by means of said misrepresentations.

125.    Additionally, Plaintiff and the Class members seek an order requiring Target to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

///

///

///

SECOND AMENDED CLASS ACTION COMPLAINT

**SIXTH CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Business & Professions Code §§ 17500, *et seq.*)**
**(Against Defendant Shipt)**

126.  Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

127.  California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

128.  Shipt's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

129.  Shipt knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

130.  Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Shipt from continuing to engage, use, or employ their practice of misrepresenting their delivery fees.

131.  Further, Plaintiff and the members of the Class seek an order requiring Shipt to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Shipt by means of said misrepresentations.

132.  Additionally, Plaintiff and the Class members seek an order requiring Shipt to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

///

///

///

SECOND AMENDED CLASS ACTION COMPLAINT

1
2

**SEVENTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Against Defendant Target Corporation)**

3    133.    Plaintiff incorporates the preceding allegations by reference as if fully set forth

4    herein.

5    134.    To the detriment of Plaintiff and the Class, Target have been, and continue to be,

6    unjustly enriched as a result of its wrongful conduct alleged herein.

7    135.    Plaintiff and the Class conferred a benefit on Target when they paid Target the CA

8    Shopper Benefits Fee, when they were promised unlimited free or flat rate delivery.

9    136.    Target unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits,

10    which under the circumstances, would be unjust to allow Target to retain.

11    137.    Target's unjust enrichment is traceable to, and resulted directly and proximately

12    from, the conduct alleged herein.

13    138.    Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees

14    received by Target as a result of its inequitable conduct as more fully stated herein.

15

16

**EIGHTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Against Defendant Shipt)**

17    139.    Plaintiff incorporates the preceding allegations by reference as if fully set forth

18    herein.

19    140.    To the detriment of Plaintiff and the Class, Shipt have been, and continue to be,

20    unjustly enriched as a result of its wrongful conduct alleged herein.

21    141.    Plaintiff and the Class conferred a benefit on Shipt when they paid Shipt the CA

22    Shopper Benefits Fee, when they were promised unlimited free or flat rate delivery.

23    142.    Shipt unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits,

24    which under the circumstances, would be unjust to allow Shipt to retain.

25    143.    Shipt's unjust enrichment is traceable to, and resulted directly and proximately

26    from, the conduct alleged herein.

27    144.    Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees

28    received by Shipt as a result of its inequitable conduct as more fully stated herein.

1

2

3

### NINTH CLAIM FOR RELIEF
### Breach of Contract
### Including Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against Defendant Target Corporation)

4      145.    Plaintiff incorporates the preceding allegations by reference as if fully set forth

5    herein.

6      146.    Plaintiff and Target have contracted for the purchase and delivery of merchandise.

7      147.    As part of that contract, Plaintiff and Defendant contracted that delivery would be

8    an agreed upon price.

9      148.    Defendant breached the terms of its contract with consumers by charging more for

10   delivery than the contracted price, vis-à-vis the addition of the CA Shopper Benefits Fee.

11     149.    Plaintiff and members of the Class have performed all, or substantially all, of the

12   obligations imposed on them under the contract.

13     150.    Plaintiff and members of the Class have sustained damages as a result of Target's

14   breach of the contract and breach of the implied covenant of good faith and fair dealing.

15                              ### PRAYER FOR RELIEF

16         WHEREFORE, Plaintiff on behalf of himself and the Class seeks judgment in an amount

17   to be determined at trial, as follows:

18     (a)    For public injunctive relief, enjoining Defendants from continuing the unlawful

19            practices set forth above;

20     (b)    For declaratory and injunctive relief as set forth above;

21     (c)    For an order requiring Defendants to disgorge and make restitution of all monies it

22            acquired by means of the unlawful practices set forth above;

23     (d)    For compensatory damages according to proof;

24     (e)    For punitive damages according to proof;

25     (f)    For reasonable attorneys' fees and costs of suit;

26     (g)    For pre-judgment interest; and

27     (h)    Awarding such other and further relief as this Court deems just, proper and

28            equitable.

SECOND AMENDED CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: May 27, 2025                    **KALIELGOLD PLLC**

                                       By: */s/ Sophia G. Gold*
                                       Jeffrey D. Kaliel
                                       Sophia G. Gold
                                       Amanda J. Rosenberg

                                       **EDELSBERG LAW, P.A.**
                                       Scott Edelsberg (SBN 330990)
                                       *scott@edelsberglaw.com*
                                       1925 Century Park E #1700
                                       Los Angeles, CA 90067
                                       Telephone: (305) 975-3320

                                       *Attorneys for Plaintiff and the Putative Class*

SECOND AMENDED CLASS ACTION COMPLAINT